UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD MARTIN,

                Petitioner,                    Case Number 2:11-CV-15034
                                                    Honorable Gerald E. Rosen

KENNETH MCKEE,

                Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND GRANTING A PARTIAL CERTIFICATE OF APPEALABILITY**

        This matter is before the Court on Petitioner Ronald Martin's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. On June 30, 2009, Petitioner was sentenced to five concurrent terms of 15-to-30 years for his conviction of five counts of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b, and four concurrent terms of 8-to-15 years for his conviction of four counts of second-degree criminal sexual conduct. MICH. COMP. LAWS § 750.520c. The petition challenges his convictions on three grounds: (1) Petitioner was deprived of the effective assistance of trial counsel; (2) the trial court violated Petitioner's rights to confrontation and present a defense by excluding evidence regarding the complainant's prior sexual history; and (3) the trial court incorrectly scored the sentencing guidelines. The Court finds that the state court adjudication of the claims fairly raised in the state courts and raised in the petition did not run contrary to, or involve an unreasonable application of, clearly established Supreme Court law. Therefore, the petition will be denied. The Court will, however, grant Petitioner a certificate of appealability with respect to his first and second claims.

# I. Introduction

In this troubling case, Petitioner was failed by both his state trial and appellate counsel. Trial counsel's inaction resulted in the loss of an opportunity to have the trial court make a final ruling on the admissibility of critical defense evidence, and appellate counsel's omissions prevented the state appellate courts from considering potentially meritorious issues. Because of the exhaustion requirement, however, counsels' actions also prevent this Court from addressing what should be the central issue in this case: whether Petitioner was denied his constitutional right to present a defense.

The charges against Petitioner involved allegations that he engaged in sexual activity with his fifteen-year-old daughter. As is often the case, the outcome of his trial hinged on the credibility of the complainant. To attack her credibility, Petitioner wanted to present evidence that she falsified the charges against him because he had threatened to report the complainant's adult-aged boyfriend to the police for having sex with her, and to have him put in jail. A pretrial hearing was held on the admissibility of this evidence, after which the trial court did not make a final ruling. Rather, the trial court denied Petitioner's motion to present this evidence without prejudice, and it stated that it would revisit the issue after the prosecutor rested its case. For reasons that are not disclosed in the record, however, the issue was never revisited at trial.

To make matters worse, Petitioner's appellate counsel never informed the Michigan Court of Appeals that the trial court indicated that it would automatically revisited the issue at trial. Instead, appellate counsel seems to have mistakenly assumed that the trial court's initial order was a final one, and simply argued that the pretrial motion was improperly denied. Appellate counsel did argue that trial counsel was ineffective for failing to raise the issue again at trial, but only on the narrow basis that two prosecution witnesses created a new basis to present the defense evidence that

did not exist before. This assertion was belied by the record. The witnesses did not testify to the things appellate counsel claimed they did. Missing the obvious, appellate counsel never argued that trial counsel was ineffective for failing to revisit the request to present the defense evidence for the simple reason that the trial court said that it would. The state appellate court was simply never informed of this rather significant fact.

These failures had numerous adverse consequences for Petitioner. First and foremost, his jury never heard his defense. Second, the trial court was never given the opportunity to rule with finality on the admissibility of the defense evidence. Lastly, the Michigan Court of Appeals was not squarely presented with Petitioner's potentially meritorious claims. The Court is therefore presented with a case in which it is likely that a defendant's right to present a defense was lost through the ineffectiveness of trial and appellate counsel. Because these potentially meritorious arguments were not first presented to the state courts, and are thus unexhausted, and because they do not even appear to be explicitly raised in the instant petition, the Court must deny Petitioner the habeas relief requested. The Court makes clear, however, that it views the important issue of the denial of the right to present a defense as unexhausted.

## II. Facts and Procedural History

As indicated, prior to trial, Petitioner's counsel filed a motion seeking permission to admit evidence that the complainant was in a sexual relationship with an eighteen-year-old boy. A hearing was held on this motion on February 18, 2009. At the hearing, defense counsel acknowledged that Michigan's rape shield statute generally prohibits testimony of prior sexual conduct by the complainant and that the two statutory exceptions did not apply to Petitioner's case. He asserted, however, that such evidence is admissible where the defendant is attempting to show the

complaining witness's bias or ulterior motive for making a false charge.

Defense counsel explained that from the time the complainant was fifteen years old, she was having consensual sex with someone named "Stephen," who was three or four years older than her. He noted that the existence of this relationship was known by the complainant's mother, friends, and uncle. Defense counsel stated that Petitioner confronted the complainant about the relationship and warned her that if she did not stop having sex with Stephen that he would call the police. Petitioner asserts that the complainant's concern that he would jail Stephen created a motive for her to falsely accuse Petitioner.

Counsel stated he was sensitive to the public interest underlying the rape shield statute. So rather than embarrass the complainant by cross-examining her on the subject, defense counsel suggested that the parties enter into a stipulation that the complainant had sexual contact with Stephen and that Petitioner confronted her about it. Defense counsel further noted that Petitioner was only fourteen years old when the complainant was conceived, and his regret at becoming a father at such a young age supported his strong reaction when he learned that his daughter might make the same mistake.

The prosecutor responded that the evidence should nevertheless be excluded because defense counsel's rationale created a "slippery-slope" that would apply in any case in which in under-aged complainant had a prior sexual history. Nevertheless, the prosecutor stated that she had no objection to Petitioner offering evidence that he had a "father-daughter talk" about engaging in sexual relations at her age and her defiant reaction, without stating that she had in fact had sex with someone else. Defense counsel considered the offer, but he stated "I just think it's important that we stipulate that she's had sex with this kid and that's why my client confronts her. I mean . . . if he's

-4-

confronting her, without knowing that she's had sex, that doesn't make any sense." T 2/18/09, p 12.

The trial court did not give any indication at all during the hearing regarding its view of the admissibility of the proffered defense evidence. In fact, it did not engage or question either party during the pretrial hearing at all. At the close of the hearing the court took the matter under advisement. On March 2, 2009, the court issued a form order stating only that the motion was "denied without prejudice. The Court will revisit the issue after hearing the prosecution's evidence at trial." However, neither the trial court nor defense counsel raised the issue again at trial.

With respect to the evidence presented at trial, this Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> The complainant was age 16 at the time of trial in May 2009. Martin is the complainant's father. He and the complainant's mother were never married and do not live together. The complainant lives with her mother and would normally visit her father on weekends. The complainant testified that the first time Martin did something inappropriate to her was in mid-January to early-February 2008. She stated that he grabbed the front of her pants and pulled her towards him. Later in February, Martin came into the room of the complainant's sister where the complainant was watching television, laid down next to her, and began touching her breasts on top of her bra. He eventually stopped but stayed in the bed with her. The complainant acknowledged that there were other beds available, but she stayed in the bed with Martin. At the end of February, she told her friend, OR, about this incident.
>
> In March or April 2008, Martin, the complainant, and her younger sister stayed at a Holiday Inn. The complainant testified that, just after her sister left the room to go to the swimming pool, Martin took the complainant by the arms and pulled her towards him. The front of their bodies touched, and he tried to kiss her. Later that night, Martin lay down next to the complainant while her sister was in the other bed. He touched the complainant's breasts underneath her bra, put his hand down her shorts, and digitally penetrated her vagina. Martin then followed her into the bathroom, took off her shorts and his boxers, put her on the counter, and penetrated her vagina with his penis.

-5-

On cross-examination, the complainant testified that Martin had been in the bathroom and as he was walking out, she was walking in, and he then followed her back in. However, her testimony at the preliminary exam indicated that he had not been in the bathroom first. In a prior statement given to Amy Allen at Care House, the complainant said that she and her sister were in the same bed, that Martin moved her sister to the other bed, and then he got in bed with the complainant and penetrated her. She explained the discrepancy by saying that she must have mixed up the events. She acknowledged that she continued to visit Martin after the hotel incident, even though she was afraid he might rape her again, because she still wanted to see her dad.

During the summer of 2008, Martin was going through a divorce and began living with his brother, Don Martin. Martin occupied the guest bedroom in Don Martin's house. When the complainant stayed overnight with Martin, they slept in the same bed. The complainant said that she could not sleep on the couch because it hurt her back. On one occasion, she got into bed after Martin was already in bed. He touched her breast underneath her bra. She claimed that he then removed her shorts and asked her to remove her shirt. When she declined to do this, Martin took off his boxers and then penetrated her vagina with his penis.

Also during the summer of 2008, while the complainant was staying at her grandmother's house, Martin followed her into the bedroom and touched her breast underneath her bra. She initially said that he stopped and left when her sister came into the room to go to bed. On cross-examination, however, she said that he stayed in the room after her sister got in bed and resumed the inappropriate touching after her sister went to sleep. Also, she contradicted herself with regard to the timeframe, stating that this happened at the end of Spring 2008.

The complainant testified that, on a subsequent occasion at Don Martin's house, Martin joined her while she was in the shower. He pulled her towards him and his chest was touching her breasts. He asked if she wanted him to get out; he left when she said yes. She then finished her shower. When she went to the bedroom to get dressed, he was also getting dressed. At that moment, her sister called, asking to be picked up. After the phone call, Martin penetrated the complainant's vagina with his penis. This time he wore a condom. On cross-examination, the complainant said that she got dressed in the bedroom, whereas at the preliminary examination she said that she got dressed in the bathroom. Also, she said that Martin was in the kitchen when she initially entered the bedroom. She also stated that he stopped because of the phone call.

Toward the end of August 2008, the complainant went to a birthday party with Martin and then returned to Don Martin's house with him. She got in bed, and Martin joined her. She claimed that he then penetrated her vagina with his penis. Although she saw Martin after this incident, this was the last time the abuse

-6-

occurred. The complainant had previously told Amy Allen of Care House that everything started after Martin moved in with Don Martin. She also told Allen that two of the rapes occurred in her bunk bed. The bunk bed arrived at Don Martin's house in August 2008.

In October 2008, the complainant told her boyfriend, CH, about what happened. Two days later, she told her best friend, OR, the full story as well. The complainant said that she finally told someone because she did not want to have to keep visiting Martin and did not want the same thing to happen to her sister. She could not explain why she waited until October. She said that OR told her she had to tell someone about the abuse. They decided to tell OR's mother, CR. CR is also the complainant's godmother. OR was the one that actually told CR about what happened, but the complainant responded to questions. The three of them then told the complainant's mother.

On cross-examination of the complainant, defense counsel established that she had incorrectly told her mother that all four incidents of intercourse happened at Don Martin's house. Further, defense counsel established that during the time period of the assaults, the complainant had visited Martin more often than she previously had. The two of them had done many activities together, such as going to Cedar Point and Michigan Adventure. Although the complainant claimed that she went to Don Martin's home to see her sister, she stayed even when her sister was not there. Also, the complainant chose to stay with Martin even though she had the option to go to her grandmother's house. The complainant had also testified on Martin's behalf when a personal protection order was sought regarding visitation rights for her sister.

Further, defense counsel established that, in October 2008, Martin had refused the complainant's request that she be put on his cell phone plan. She made her allegations of sexual abuse shortly after their argument. The complainant wanted to be on Martin's phone plan because it would have been easier and cheaper to talk to her friends. She claimed that he put her off, saying that he would wait to look at her grades. Despite this testimony, the complainant maintained that, other than the touching and rapes, there was nothing that was making her angry with Martin during the relevant period.

In his affidavit, Martin claimed that he agreed to put the complainant on the cell phone plan if her grades improved and she stopped seeing SC. Martin claimed that SC, 18 years old at the time, was having sexual relations with the complainant. Martin and the complainant got into numerous arguments over her relationship with SC. In the spring of 2008, Martin told the complainant that he did not approve of her seeing SC. In the summer of 2008, Martin again told the complainant not to see SC anymore. Martin also threatened to report SC to the police if the complainant did not stop seeing him. Martin made a similar threat at the end of the summer of 2008. Before trial, Martin sought to have evidence of the complainant's relationship with

SC admitted into the record. But the trial court precluded the evidence on the basis of the rape shield law.

The complainant's mother testified that the complainant was upset and crying when she told her about what was happening with Martin. Her mother said that the complainant had told her that sexual intercourse had occurred on four occasions, each time at Don Martin's house. She said that during the relevant time period, the complainant would insist on going to Don Martin's home. The complainant never indicated that she did not want to go. After the complainant's disclosure regarding the abuse, her mother took her to see her pediatrician, Dr. Stacy Gorman.

Dr. Gorman testified that the complainant told her that Martin had forced her to have sexual intercourse four times since February 2008. Dr. Gorman took a patient history, which she said was necessary for treatment to know what happened and who was responsible. Dr. Gorman subsequently recommended counseling for the complainant. However, she did not perform a pelvic examination on the complainant. She explained that she did not perform a pelvic examination because the complainant had already had one in August 2008. Dr. Gorman further explained that she did not feel the need to repeat the exam because the complainant told her that August was the last time any sexual abuse had occurred.

After seeing Dr. Gorman, the complainant went to the Waterford Police Department and then to Care House, where Amy Allen conducted a forensic interview. Without objection, Allen was qualified as an expert in forensic interviewing, as well as on characteristics of children who report sexual abuse. Allen stated that she followed a forensic interviewing protocol that involved open-ended questions. In essence, she testified that it was not unusual for adolescents to delay reporting sexual abuse by a family member. Further, she said that it would not be unusual if one did not see outward signs of abuse. She also said it would not be unusual for a victim to show no fear. She explained that compliance might result because of the body's response to the abuse or because the child did not know how to make it stop. Allen also said that a child might return to the abuser because of a desire to protect someone else and might stay even if the person to be protected is not present because of compliance with the abuser. She explained that people change details when remembering traumatic events. Further, she said that a victim's motivating factor in reporting abuse was most often to make it stop, not trigger prosecution.

On cross-examination of Allen, defense counsel established that there were some similarities among child sexual abuse victims. Defense counsel further established that the complainant had not run away from home, did not use drugs, did not have poor hygiene, and was not underweight or overweight. Allen clarified, however, that an abused child could have really poor or extremely good hygiene, and really poor or extremely good grades. Allen did not know if the complainant suffered

-8-

from low self-esteem. Defense counsel called into question that a 14-or 15-year-old child would withhold reporting abuse because he or she was close to independence. Further, defense counsel ascertained that Allen was not assessing truthfulness. Allen told the defense counsel that, in embellishing a story, a 15-year-old child would likely focus on what should have been done, like fighting the molester. Allen also acknowledged that inconsistent stories might result from blending events or from outright lying. Further, defense counsel established that Allen could not tell the difference between when a child was lying and when a child was changing the story based on more legitimate factors.

On a redirect examination, Allen testified that an investigator tries to develop alternative explanations for why a child is making the statement. She explained that when younger children are involved, an alleged touching could be for hygienic purposes. Allen did not speak to alternative hypotheses in this case. Yet, she explained that her team ruled out any alternative hypotheses for the complainant.

*People v. Martin*, No. 293129, 2011 WL 445806, at *1-4 (Mich. Ct. App. Feb. 8, 2011).

Based on this evidence the jury found Petitioner guilty as indicated above. After sentencing, Petitioner obtained appellate counsel who filed a motion for new trial. The motion asserted that Petitioner was denied the effective assistance of trial counsel. Among other arguments, the motion alleged that trial counsel's pretrial motion was ineffectively presented. The motion also asserted that the trial testimony of the complainant's physician, Dr. Gorman, and the Care House worker, Amy Allen, created a new basis that defense counsel should have used to renew his motion for presentation of the complainant's sexual history. Significantly, the motion did not assert that trial counsel was ineffective for failing to renew his motion on the basis of the language of the trial court's initial order, which stated that it would reconsider the matter at the close of the prosecution's case as a matter of course.

On January 5, 2010, the trial court issued an opinion and order denying the motion for a new trial. The court found that trial counsel adequately and effectively presented his pretrial motion. However, the court did not discuss Petitioner's claim that counsel was ineffective for failing to

-9-

renew the issue regarding the admission of the complainant's sexual history at trial.

Petitioner then filed a brief in the Michigan Court of Appeals that raised the following claims:

> I. [Petitioner] was deprived of the effective assistance of counsel where defense counsel failed to litigate fully or properly request to introduce evidence excepted under the rape shield statute; where counsel failed to secure complainant's medical records; where counsel failed to secure the testimony of a responsive expert on the issue of the characteristics of child sexual abuse victims; and where counsel failed to object to inadmissible hearsay.

> II. The trial court's pre- and post-trial rulings rejecting [Petitioner's] rape shield challenge were an abuse of discretion, and deprived [Petitioner] of his right to confront the witnesses and the right to present a defense, where the court excluded material evidence of the complainant's sexual history and motive to fabricate despite the prosecution's introduction of medical testimony of the complainant's earlier pelvic examination and expert testimony that the Care House "team" had ruled out alternative hypothesis for the complainant's allegations.

> III. The trial court erroneously scored OV8, OV13, and PRV7, and also violated [Petitioner's] due process rights at sentencing by scoring the guidelines for reasons not proven to the jury beyond a reasonable doubt, in violation of the Sixth and Fourteenth Amendments.

Again, with respect to his first issue, Petitioner did not mention or argue that the trial court's pretrial order stated that it would revisit the admissibility of the defense evidence after the prosecution rested. Rather, his claim relied on the fact that Dr. Gorman and Allen opened the door to the defense evidence with their testimony. On February 8, 2011, the Michigan Court of Appeals issued an unpublished per curiam opinion affirming Petitioner's convictions. *Id*. The court found that the prosecution witnesses did not testify to the things that Petitioner claimed open the door to the defense evidence, and therefore there was no new basis for admitting the sexual history evidence. The court did not address the propriety of the trial court's initial ruling.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court that raised

-10-

the same claims. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. *People v. Martin*, 489 Mich. 975 (2011) (table).

Petitioner then commenced the instant action, raising the same three claims he presented to the state courts during his direct appeal.

### III. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v.*

-11-

*Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*.  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state

-12-

prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### IV. Analysis

#### A.  Ineffective Assistance of Counsel

Petitioner's first claim asserts that he was deprived of the effective assistance of trial counsel. Specifically, he alleges his counsel: (1) failed to effectively seek admission of the complainant's sexual history to show her motive to falsely accuse Petitioner; (2) failed to secure the complainant's medical records; (3) failed to present expert testimony on the characteristics of child sexual abuse victims; and (4) failed to object to inadmissible hearsay. Respondent asserts that the claims were reasonably adjudicated by the state courts.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

As to the performance prong, Petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment. *Id*. at 690. Petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id*. at 689.

To satisfy the prejudice prong under *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id*. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective-assistance-of-counsel claims arising from state-criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state-appellate courts reviewing their performance. "The standards created by *Strickland* and [section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S.Ct. at 788 (internal and end citations omitted). "When [section] 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id*.

## 1. Failure to effectively seek admission of complainant's sexual history

Petitioner first asserts that his trial counsel did not effectively seek admission of evidence of the complainant's sexual history with Stephen. Petitioner argues that the complainant had a sexual relationship with Stephen when she was a minor and Stephen was an adult. He states that he objected to the relationship and threatened to inform the police about it if she continued to see him.

-14-

According to Petitioner, the dispute came to a head in October of 2008 during an argument where Petitioner threatened to put on Stephen in jail and refused to put the complainant on his cell-phone plan unless she promised to stop contacting him. It was immediately after this argument that Petitioner asserts the complainant made the false allegations against him. Petitioner also argues that his trial counsel should have renewed the motion to admit this evidence on the narrow grounds that the testimony of two prosecution witnesses created a new basis for admitting the evidence.[1]

The Michigan Court of Appeals rejected the claim as follows:

Martin argues that defense counsel provided ineffective assistance by inadequately arguing for the admission of evidence pertaining to the complainant's prior sexual experience with SC. However, we find no merit to this argument because, as the trial court found, defense counsel did not engage in deficient conduct where he did in fact "argue[] for admission of the [complainant's] prior sexual conduct with an older boy named [SC] to show bias and because it might be probative of the victim's ulterior motive in making a false charge." Again, defense counsel has wide discretion regarding matters of trial strategy. n16 And the fact that Martin's current counsel would have handled the argument differently does not support a conclusion that the former counsel's handling of the case was deficient. Defense counsel is not ineffective where he raises an argument, albeit unsuccessfully. n17

FOOTNOTES

n16 *Odom*, 276 Mich.App. at 415.

n17 *See People v. Weatherford*, 193 Mich.App. 115, 122 (1992).

Martin also argues that defense counsel should have presented the motion again following Dr. Gorman's and Amy Allen's testimonies. However, their testimonies did not give rise to the inferences that Martin posited. There was no basis for inferring that the complainant's hymen was or was not ruptured. Dr. Gorman

---

[1]

Petitioner also seeks an evidentiary hearing in this Court to establish a factual basis for his allegations of ineffective assistance of counsel. However, because the state courts adjudicated all of Petitioner's ineffective assistance of counsel claims on the merits, he is barred from expanding the record in this action. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011)(habeas review is "limited to the record that was before the state court.")

-15-

simply did not speak to the issue. Similarly, Allen testified that investigators generally try to develop alternative hypotheses. She did not speak one way or the other regarding whether there were any other hypotheses in this case. Given these considerations, there is no indication that a renewed motion would have been successful. In fact, the trial court's opinion implies that it would have denied a renewed motion. Accordingly, defense counsel was not ineffective, neither for his initial arguments nor for failing to renew the motion.

*Martin*, 2011 WL 445806, *13-15.

As Petitioner correctly notes, the written motion to present the sexual history evidence was brief and did not include a complete version of the defense theory. But at oral argument on the motion, defense counsel fully and competently laid-out his argument for presentation of this evidence. As indicated above, defense counsel explained at the hearing that from the time the complainant was fifteen years old, she was in a sexual relationship with Stephen, and her family members were aware of the relationship. Defense counsel stated that Petitioner confronted the complainant about it and threatened to jail Stephen if she continued to have sex with him, creating a motive for her to falsely accuse Petitioner to protect Stephen.

Counsel offered to enter into a stipulation that the complainant had sexual contact with Stephen and that Petitioner confronted her about it. Defense counsel further noted that Petitioner was only fourteen years old himself when the complainant was conceived, and his regret at becoming a father at such a young age supported his strong reaction when he learned that his daughter might make the same mistake.

Therefore, with respect to defense counsel's presentation of the initial motion, the record shows that he forcefully and effectively moved for admission of the prior sexual conduct evidence. Petitioner makes much of the fact that counsel's written motion contained virtually no detail, but there can be little doubt that his oral argument for admission of the evidence fully and effectively

-16-

articulated the defense theory and the facts on which they were based. Petitioner's current counsel asserts that the argument could have been made more forcefully, but it appears the complaint is more one of style rather than substance. There is nothing objectively deficient about an attorney filing a terse motion, but then filling in the details at the hearing on the motion. Petitioner's trial counsel did not omit any essential factual or legal basis for the motion at the hearing. Indeed, he forcefully argued for admission of the evidence and came prepared with a compromise that apparently caught the prosecutor off-guard. And in fact, it appears that the presentation of the motion was effective enough that the trial court did not deny it with finality. Rather, it only denied the motion without prejudice and stated that it would revisit the issue at trial. There are countless ways an attorney might have effectively styled his argument for admission of this evidence, and the Court cannot say that Petitioner's counsel's method was deficient. Accordingly, the Michigan Court of Appeals' conclusion was not objectively unreasonable.  Petitioner has not demonstrated entitlement to habeas relief based on this allegation of ineffective assistance of counsel.[2]

Petitioner also asserts that his defense counsel should have renewed the motion on the narrow grounds that the testimony of the complainant's physician, Dr. Gorman, and Amy Allen of Care House, created a new basis for admitting the defense evidence. Petitioner does not assert in his petition the more general claim that trial counsel was ineffective for failing to renew the motion on the ground that the language of the trial court's pretrial order indicated that the pretrial motion was only denied without prejudice. Addressing the narrow issue fairly raised by Petitioner's appellate brief, the Michigan Court of Appeals found counsel was not ineffective because neither Dr. Gorman

---

[2]  As the Court has already indicated, and will address again below, the potential ineffective assistance of counsel occurred as to a different point:  the fact that neither trial counsel nor appellate counsel properly brought the issue before the respective courts.

-17-

nor Amy Allen testified to the things Petitioner claimed they did.

Dr. Gorman testified that she examined the complainant in October of 2008. When asked if she performed a pelvic exam, Dr. Gorman responded that she did not do so because one had already been performed at an earlier appointment in August of 2008. Petitioner argues that this testimony created the impression that Dr. Gorman knew the complainant was already sexually active in August, and that since no other sexual partner was suggested to the jury, it amounted to testimony that there was physical evidence that the complainant had sexual relations with Petitioner.

Allen testified that as part of the interview process at Care House, the staff attempt to determine whether there were "alternative hypotheses" to explain the allegations. Petitioner asserts that Allen suggested that her team ruled out any alternatives. Petitioner argues that this testimony highlighted the need for evidence of an alternative hypothesis: that the complainant had a motivation to falsely accuse Petitioner in order to protect Stephen from going to jail.

The Michigan Court of Appeals decision finding defense counsel not ineffective for failing to renew the motion on this basis was reasonable. Dr. Gorman's testimony in no way suggested that her examination revealed that the complainant had been sexually active. She testified that a pelvic examination had been performed in August of 2008, but there was no testimony or suggestion as to what that examination revealed. In fact, Dr. Gorman testified that it was her partner who had performed the pelvic exam.

With respect to Allen's testimony, Petitioner's argument is insensitive to the facts. Allen testified that, in general, part of the forensic interview process is to consider alternative hypotheses so that the interviewer enters the interview with an open mind. She did not testify or suggest that she or the Care House team had ruled-out an alternative hypothesis in Petitioner's case. The Court notes

-18-

that the Michigan Court of Appeals stated in its recitation of the facts that Allen had ruled-out an alternative hypothesis, but the Court has found no such testimony or suggestion in its review of the trial transcripts, nor do the parties cite to any such testimony in the trial record. Rather, Allen testified during cross-examination that she did not know whether any particular child's story was true or whether a child was flat-out lying. She testified that she was not expressing any opinion on the complainant's truthfulness. Therefore, contrary to Petitioner's argument, Allen did not suggest that alternative hypotheses had been ruled out.

Accordingly, the testimony of Dr. Gorman and Allen did not give defense counsel any new compelling reason to argue for the admission of the defense evidence that did not exist prior to trial. The Michigan Court of Appeals' conclusion that defense counsel did not performe deficiently by failing to renew his motion on this specific basis was therefore not objectively unreasonable.

## 2. Failure to secure complainant's medical records and object to hearsay

Petitioner next claims that his trial counsel was ineffective for failing to obtain the complainant's medical records. He also alleges that Dr. Gorman's testimony that the complainant identified Petitioner as the person who sexually assaulted her was improperly admitted under Michigan Rule of Evidence 803(4). The Michigan Court of Appeals rejected these allegations on the merits as follows:

> Martin further argues that defense counsel was ineffective for failing to challenge Dr. Gorman's claim that the complainant had reported that he was the perpetrator.
>
> Defense counsel did not object when Dr. Gorman testified that the complainant identified Martin as her sexual assailant. However, the trial court concluded that the testimony was admissible since Gorman testified that it was necessary for medical diagnosis and treatment.[18] And such statements are deemed inherently trustworthy because of a patient's self-interest in receiving proper care.[19] Thus, even had defense counsel made the objection, the trial court would have denied

it. And, as noted, futile objections are not required.[20]

FOOTNOTES

18 MICH. RULE EVID. 803(4); *People v. Meeboer*, 439 Mich. 310, 322 (1992).

19 *Meeboer*, 439 Mich. at 322-323; *People v. Crump*, 216 Mich.App. 210, 212 (1996).

20 *Davenport*, 286 Mich.App. at 199.

> Martin also argues that defense counsel should have secured Dr. Gorman's medical records, as they may have identified an alternate source of the complainant's medical condition. We disagree. Regarding the medical records, the trial court noted that defense counsel had been given the medical record concerning the October visit. And Martin failed to show that a request for the earlier records would have been successful given their privileged nature. The issue was not whether the complainant had previously had sexual intercourse, but whether the evidence would have been admissible to support Martin's defense. Thus, because Martin has only offered speculation regarding how the records would have been relevant in that respect, counsel was not ineffective for failing to request the earlier medical records.

*Martin*, 2011 WL 445806, *15-16.

This decision was reasonable. In its order denying Petitioner's motion for new trial, the trial court made a finding of fact that, contrary to Petitioner's allegations, the medical records from the October appointment had been provided to defense counsel. A state court's factual determination is entitled to a presumption of correctness on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption, but only if he offers clear and convincing evidence that the factual determination was incorrect. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Petitioner has not presented this Court with any evidence, let alone clear and convincing evidence, that defense counsel did not have the medical records at issue.

Petitioner's argument is also based on unfounded speculation. Petitioner theorizes that the complainant must have identified a person other than him as having sexual relations with the

complainant during her August doctor appointment. Dr. Gorman testified, however, that the complainant identified Petitioner as having molested her during the October appointment, and that the allegation was promptly reported to the authorities. Dr. Gorman did not testify that the complainant made any allegations of sexual activity during her August examination. Dr. Gorman merely testified that during the October examination the complainant stated that the last molestation by Petitioner happened in August, and that was the reason she did not feel it was necessary to perform another pelvic examination. Accordingly, Petitioner's statement that the complainant "must have identified a different perpetrator in August," (Petition, p. 16), results from a misunderstanding of Dr. Gorman's testimony.

With respect to counsel's failure to object to Dr. Gorman's testimony that the complainant identified Petitioner, Petitioner cannot show that the trial court would have sustained an objection. The Michigan Court of Appeals found that the testimony was admissible as a matter of state law under Michigan Rule of Evidence 803(4) as interpreted in *People v. Meeboer*, 439 Mich. 310, 322 (1992). This Court may not second-guess that determination of state evidentiary law. Alleged errors in the application of state evidence law are not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). This is because the state courts are the final arbiters of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). A state court's determination that a particular piece of evidence is or is not admissible as a matter of state evidentiary law is therefore binding on a federal habeas court. *See McGuire*, 502 U.S. 62, 67-68. Accordingly, Petitioner's argument that his counsel should have objected to Dr. Gorman's testimony that complainant identified Petitioner as the person who molested her is foreclosed by the state

-21-

court's holding that the testimony was admissible.

### 3. Failure to present expert testimony

Petitioner next asserts that his trial counsel was ineffective for failing to present an expert witness to rebut Allen's testimony regarding alternative hypotheses. Petitioner alleges that his threat to jail Stephen is exactly the type of alternative hypotheses that should have been considered in a forensic interview, and he suggests that if Allen had been informed of those facts, the case might not have been referred for prosecuted. Petitioner has attached an affidavit from Katherine Okla, a clinical psychologist, who states that in her opinion there "were multiple factors which undermine the reliability of the complainant's testimony in this case," and "there was information presented by the prosecution through expert witness testimony which should have been countered through a rebuttal witness for the defense." Okla Affidavit, p 2. The affidavit goes on to detail Okla's perceived problems with Allen's testimony.

The Michigan Court of Appeals rejected the claim as follows:

> According to Martin, his defense counsel was also ineffective because he should have consulted with an expert to assist in effectively cross-examining Allen and should have presented a defense expert to respond to her claim of no alternative hypothesis.

> With his motion for a new trial, Martin attached a compelling affidavit from psychologist Katherine Okla, Ph.D. to support his claim that defense counsel should have secured an expert to counter Amy Allen's testimony and to assist with cross-examining her. In the opinion denying the motion, the trial court failed to address this aspect of Martin's motion.

> In retrospect, it is possible that defense counsel could have secured a counter expert. Allen tended to undermine various bases for the argument that the complainant's inconsistencies demonstrated a lack of truthfulness. While she did not say that the complainant was telling the truth, Allen explained the delay in reporting the abuse, gave an innocent reason for the inconsistencies in the complainant's testimony, and offered a plausible explanation for why the complainant may have voluntarily returned to Martin's home after suffering the abuse. However, ahead of

-22-

trial, defense counsel may have legitimately thought that cross-examination would suffice. As previously noted, whether to call an expert witness is a matter of trial strategy, and this Court will not judge defense counsel's performance with the benefit of hindsight.[21] For these reasons, we conclude that Martin has not established ineffective assistance of counsel based on the failure to call an expert witness.

FOOTNOTES

21 *Payne*, 285 Mich. App. at 190.

*Martin*, 2011 WL 445806, *19.

The rejection of this claim by the Michigan Court of Appeals was reasonable. Petitioner is unable to overcome the strong presumption that counsel rendered adequate assistance and "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Although some attorneys may have called an expert witness to testify, that is not the test for habeas review. The Supreme Court has stated that there are "countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. "It can be assumed that in some cases counsel would be deemed ineffective for failing to consult or rely on experts, but even that formulation is sufficiently general that state courts would have wide latitude in applying it." *Harrington*, 131 S. Ct. 770 at 789.

Here, the state court noted that it was reasonable for Petitioner's trial counsel to rely on cross-examination to challenge Allen's testimony. In fact, as noted above, Allen conceded on cross-examination that she had no idea whether a particular child is flat-out lying about allegations of sexual abuse, and that she was expressing no opinion as to the complainant's truthfulness. Furthermore, Petitioner's counsel used Allen's testimony to show inconsistencies between what the complainant told Allen and her later testimony. The decision by the state court that counsel was not

-23-

ineffective for the way he dealt with Allen's testimony fell within the range of reasonable outcomes.

Therefore, Petitioner has not demonstrated entitlement to habeas relief based on this claim.

### 4. Failure to object to hearsay

Petitioner alleges that his trial counsel should have objected to the admission of statements

made by the complainant to other people regarding her allegations against Petitioner. The Michigan

Court of Appeals rejected the claim on the merit as follows:

> Finally, Martin contends that defense counsel was ineffective for failing to object on hearsay grounds to the complainant's alleged statements to others that Martin had molested her.
>
> We first note that these were not excited utterances. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."[22] Although the passage of time is not conclusive, the focus is on the "possibility for conscious reflection."[23] Here, the complainant had such an opportunity for reflection during the approximately two-to three-month interval between the last instance of abuse and the statements she made to others.
>
> FOOTNOTES
>
> 22 MICH. RULE EVID. 803(2).
>
> 23 *People v. Smith*, 456 Mich. 543, 551 (1998).
>
> Nonetheless, the prosecution argues that these statements were made to explain the complainant's ensuing actions. That is, the statements the complainant made to her mother and godmother served as the catalyst for Amy Allen's ensuing investigation. Moreover, defense counsel could have made a tactical decision that nothing was to be gained by objecting to these statements. Accordingly, Martin has not established ineffective assistance of counsel based on the failure to object.

*Martin*, 2011 WL 445806, *18-19.

The fact that the complainant made statements before trial that Petitioner molested her was

not, in itself, particularly damaging to his defense. Obviously, if the complainant had not told anyone

about her allegations, there would not have been a prosecution. The Court's review of the record

-24-

reveals that defense counsel used the prior statements by the complainant to show that she was not credible. He pointed to inconsistencies in her statements, and ironically, Petitioner's current counsel refers to some of these same inconsistencies to argue that the out-of-court statements were unreliable. For example, the complainant's friend testified that she told her in the Summer of 2008 that Petitioner had only touched her inappropriately, even though the complainant later alleged that she had been subjected to vaginal intercourse by that time. That is, the prior statements worked into Petitioner's defense that the complainant made-up the allegations and increased their intensity as time went on. The Court cannot conclude that defense counsel performed deficiently by using the prior statements to bolster his attack on the complainant's credibility instead of objecting to the introduction of the statements. Petitioner has, therefore, not demonstrated entitlement to relief with respect to this claim.

**B. Exclusion of Complainant's Sexual History**

Petitioner's second habeas claim asserts that his rights to confrontation and present a defense were violated when he was prevented from presenting evidence of the complainant's sexual history with Stephen. The trial court denied Petitioner's pretrial motion to present this evidence without prejudice and said it would revisit the issue at trial, but Petitioner's trial counsel never renewed his motion. Petitioner claims that the trial court erred in its initial ruling, and then erred again when it denied his motion for a new trial, which was specifically premised on the allegation that the testimony of Dr. Gorman and Amy Allen created a new basis for admitting the defense evidence that did not previously exist.

The Michigan Court of Appeals opinion only dealt with the second argument–the allegation

that the testimony of Dr. Gorman and Amy Allen created a new basis for the defense evidence. The

court of appeals rejected the claim as follows:

> Martin argues that his motion for a new trial should have been granted based
> on the need for the evidence of the complainant's relationship with SC to rebut the
> testimony by Amy Allen of Care House and Dr. Gorman.

> This Court reviews for an abuse of discretion a trial court's decision to
> preclude evidence.[24] An abuse of discretion occurs when the trial court chooses an
> outcome that falls outside the range of reasonable and principled outcomes.[25]

> FOOTNOTES

> 24 *See People v. Hackett*, 421 Mich. 338, 349 (1984).

> 25 *See People v. Babcock*, 469 Mich. 247, 269 (2003).

> A. TESTIMONY OF DR. STACY GORMAN

> Dr. Gorman testified that she did not perform a pelvic examination in October
> 2008, because one had been performed in August 2008, and the incidents ended in
> August. Martin argues that this testimony led the jurors to believe that the
> complainant's hymen was ruptured and that the complainant had engaged in sexual
> activity. He further argues that, because of this inference, the jurors would assume
> that he ruptured her hymen. For these reasons, Martin contends that the evidence of
> the complainant's sexual conduct with SC would have given another explanation for
> her hymen being ruptured. However, Dr. Gorman gave absolutely no indication
> whether the complainant's hymen was or was not intact. Therefore, this argument
> has no merit.

> B. TESTIMONY OF AMY ALLEN

> Amy Allen testified that an investigator tries to develop alternative
> explanations. She also testified that her team concluded that there were no alternative
> explanations for the allegations the complainant made in her interview. Martin posits
> that the jury must have inferred that there were no other hypotheses in this case and
> no other suspects. He suggests that a reference to SC would have given rise to
> another hypothesis and another suspect. While evidence of the complainant's sexual
> past may have developed an alternative hypothesis, such evidence is precluded by
> the rape shield law, and Martin has failed to show sufficient cause to circumvent the
> statutory prohibition.

*Martin*, 2011 WL 445806, *19-21.

-26-

The Court finds that Petitioner has not demonstrated entitlement to habeas relief with respect to this claim because the trial court never definitively found that the evidence was inadmissible. That is, it is not clear based on the record the extent to which Petitioner would have been allowed to present parts, or even all, of the evidence.

The Sixth Amendment guarantees a defendant the right to be confronted with the witnesses against him. U.S. Const. amend. VI. The Confrontation Clause protects a defendant's literal right to confront witnesses at the time of trial, and a defendant's right to cross-examination. *Delaware v. Fensterer*, 474 U.S. 15, 18 (1985). A trial court has the discretion to limit the scope of cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 675 (1986). This includes discretion to impose limits based on concerns about harassment, prejudice, confusion on the issues, witness safety, or interrogation that is repetitive or only marginally relevant. *Van Arsdall*, 475 U.S. at 675; *King v. Trippett*, 192 F.3d 517, 524 (6th Cir. 1999). The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defense might desire. *Fensterer*, 474 U.S. at 20; *Haliym v. Mitchell*, 492 F.3d 680, 701 (6th Cir. 2007).

Like the right to confrontation, the Supreme Court repeatedly has recognized that the right to present a defense also is subject to reasonable restrictions. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998) (addressing the exclusion of exculpatory polygraph test result); *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (the Sixth Amendment does not confer on the accused an "unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence"); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987) (addressing criminal defendants' rights to testify in their own behalf); *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973) (addressing the

-27-

defendant's right to present and cross-examine witnesses in his own defense).

> [S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve. Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.

*Scheffer*, 523 U.S. at 308 (internal citations omitted).

When inquiring into the constitutionality of a trial court's decision to exclude evidence, a habeas court must consider the relevancy and cumulative nature of the excluded evidence, and the extent to which it was "indispensable" to the defense. *Crane v. Kentucky*, 476 U.S. 683, 691 (1986). Against this, courts must balance the state's interests in enforcing the evidentiary rule on which the exclusion was based. *Id*. In *Michigan v. Lucas*, 500 U.S. 145, 150 (1991), the Supreme Court recognized that Michigan's Rape Shield Statute represents a valid legislative determination that rape victims deserve heightened protection from harassment.

The Sixth Circuit distilled this body of law to determine what is "clearly established" for purposed of AEDPA review. *See Gagne v. Booker*, 680 F.3d 493 (6th Cir. 2012) (en banc). The Sixth Circuit held that *Crane*, 476 U.S. at 690-91, stands for the general proposition that "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense"— such that the court may not "exclude competent, reliable evidence . . . central to the defendant's claim of innocence[,] . . . [i]n the absence of any valid state justification." *Gagne*, 680 F.3d at 514. And the Court held that *Lucas* stands for the proposition that a court must balance a state's interest in excluding certain evidence under the rape shield statute against a defendant's constitutionally protected interest in admitting that evidence on a case-by-case basis, and that neither interest is superior per se. *Id.*

-28-

In this case, Petitioner's theory of defense was that the complainant had a motive to falsely accuse him of rape because she was trying to protect her adult-aged boyfriend from going to jail for having sex with a minor. As Petitioner correctly points out, the less convincing motive presented at trial was that the complainant falsely accused Petitioner of raping her because he would not put her on his cell phone plan. In this Court's view, Petitioner's threat to jail Stephen was a critical element of his theory of defense that the complainant was motivated to falsify charges against him.

If the case were tried before this Court, it likely would have found that Petitioner had a right to present this defense evidence. *See Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (a witness's motivation in testifying carries with it the constitutionally protected right of cross-examination); *Lewis v. Wilkinson*, 307 F.3d 413, 422 (6th Cir. 2002) (statements in complainant's diary about sexual history with other men had substantial probative value as to her motive in pressing charges against the petitioner).[3] The complainant in this case testified that Petitioner sexually abused her for a period of months between the Spring and Fall of 2008, without telling anyone about it until October of 2008. Petitioner alleges that he repeatedly warned the complainant about having sex with

---

[3]

Very recently, the Sixth Circuit noted that evidence offered to show a witness's bias or motive against a defendant is afforded greater protection under the Confrontation Clause than an attack of a witness's general credibility:

> The former type of questioning tries to pinpoint a specific explanation for why a witness might be testifying falsely—say that a rape accuser holds a preexisting grudge against the defendant and wants to see him suffer. The latter type of questioning tries only to show that the witness has lied before and may be lying again. The Confrontation Clause protects a defendant's right to explore specific motivations, but it "does not require that a defendant be given the opportunity to wage a general attack on credibility by pointing to individual instances of past conduct."

*Fuller v. Woods*, No. 11-2425, slip op. at 7 (6th Cir. June 14, 2013) (citing *Boggs v. Collins*, 226 F.3d 728, 740 (6th Cir. 2000)).

Stephen during this same time-frame, but the matter finally came to head in October of 2008 during the conversation about the cell phone when he again threatened to jail Stephen. The timing of the complainant's allegations and the threat to jail Stephen created a much more plausible motive for a false accusation than the mere fact that Petitioner would not put the complainant on his phone plan.

Review of Petitioner's claim, however, is muddied by the fact that the admissibility of the prior sexual conduct evidence was never fully adjudicated by the trial court. Given the non-committal wording of the trial court's pretrial order, it is not at all clear that Petitioner would have been prohibited from offering the defense evidence had he raised the issue at trial. The trial court's pretrial order indicated it would revisit the matter, but defense counsel never broached the subject. Rather, at trial, Petitioner chose only to attack the complainant's credibility. That is, Petitioner's claim assumes that the trial court's pretrial order was a final decision on the issue and prohibited the presentation of evidence of the complainant's sexual relationship with Stephen–unless the prosecutor otherwise opened the door. But the language of the trial court's pretrial order undermines that assumption. It is totally unknown what the trial court would have done had defense counsel renewed his motion at trial. Because the admissibility of the defense evidence was not resolved during Petitioner's trial, there is no basis on which to find that his right to present a defense was violated by any ruling made by the trial court.

This leaves an obvious and troubling point. If the admissibility of this defense evidence was not resolved by the trial court's pretrial order with finality, then surely defense counsel was ineffective for failing to raise the issue again at trial, or at least counsel should have ascertained the bounds of what would have been allowed. The problem is no such claim was fairly presented to the state courts during Petitioner's direct appeal. Indeed, it does not appear that Petitioner makes any

-30-

such claim in his habeas petition. Incredibly, no mention at all was made by Petitioner in his state court briefs–or in his pleadings in this Court–that the trial court denied the pretrial motion without prejudice and stated that the issue would be revisited at trial. Petitioner's related claim on direct appeal only focused on the fact that prosecution witnesses opened the door to reconsideration of the defense evidence when their testimony created a new basis for its admission that did not previously exist.

A state prisoner must exhaust available state court remedies before he can secure federal habeas corpus review. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Picard v. Connor*, 404 U.S. 270, 275 (1971). A petitioner satisfies the exhaustion requirement when he raises the claim in a manner that affords the state courts a fair opportunity to address the federal constitutional issue. *See, e.g., Castille v. Peoples*, 489 U.S. 346, 351 (1989). Petitioner must present the very claim to the state courts—setting forth essentially the same facts, evidence, and legal basis—that he seeks to present to the federal court. *See Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Picard*, 404 U.S. at 275-76;  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

Petitioner did argue in the state courts that his trial counsel was ineffective for failing to renew his motion. But wherever that argument was made, it was always premised on the allegation that the testimony of Allen and Dr. Gorman created a new basis for admission of the evidence that did not exist before. That claim was reasonably and correctly rejected by the state courts because neither Allen nor Gorman testified to the things Petitioner claimed they did. The much stronger claim that counsel was ineffective for failing to renew his motion on the grounds that the pretrial order indicated the matter would automatically be revisited puts the claim in a significantly different and stronger evidentiary posture than what the state courts were presented with.

The situation is analogous to what occurred in *Sampson v. Love*, 782 F.2d 53, 57 (6th Cir. 1986). In *Sampson*, the habeas Petitioner claimed in his state court appeal that his jury imposed a seventy-five year sentence out of vindictiveness because it was possible that they knew his previous sixty-year sentence had been reversed on appeal. The state court rejected the claim because Petitioner had not shown that the jury in fact knew about the prior reversal. On federal habeas review, the Petitioner supplemented his claim with affidavits by two jurors that stated they in fact knew about the prior reversal. The Sixth Circuit found this new evidence rendered the claim unexhausted because "[p]reviously, [petitioner] could only speculate whether the jurors knew of the prior sentence. Now he has direct proof. . . . That evidence places Sampson's claim in a significantly different posture than that at the state level." *Id*., 782 F.2d at 57. Like *Sampson*, in this case, Petitioner presented the state court with a claim that the trial court might have revisited its pretrial ruling in light of the testimony of Allen and Dr. Gorman. The revelation of the language in the pretrial order allowing for automatic reconsideration of the pretrial ruling places Petitioner's claim in a significantly different and stronger posture than what was presented to the state courts.

Accordingly, to the extent Petitioner wishes to argue in this action that his trial counsel was ineffective for failing to renew his motion to present the defense evidence because the trial court said it would revisit the issue at trial, the claim is not exhausted and therefore cannot be considered. The Court notes, however, that Petitioner has not yet filed a motion for relief from judgment in the state courts were such a claim could be presented. And though Michigan Court Rule 6.508(D)(3), prevents a defendant from raising new claims absent a showing of "good cause" and "actual prejudice," Petitioner's appellate counsel's failure to appreciate the language in the pretrial order

might qualify. These matters, however, must now be left for the state courts.[4]

## C. Sentencing Guidelines

Petitioner's last claim asserts that the sentencing guidelines were scored incorrectly and were based on facts not proven beyond a reasonable doubt.

To the extent that Petitioner argues that the trial court erred in scoring the sentencing guidelines, his claim raises issues of state law and does not implicate any federal rights and is non-cognizable on federal-habeas review. *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011) (habeas-corpus relief does not lie for errors of state law) (*quoting Estelle* 502 U.S. at 67). Petitioner's assertion that his sentence is invalid because the trial court incorrectly scored the state's sentencing guidelines fails to state a claim for federal-habeas relief because it is a state-law claim and non-cognizable. *See Austin v. Jackson*, 213 F.3d 298, 300-01 (6th Cir. 2000)(citation omitted).

To the extent that Petitioner argues that his sentence is improper because his minimum-sentence-guidelines range was increased based on facts not proven to jury beyond a reasonable doubt or admitted by him is likewise without merit. In support of this claim, Petitioner relies on *Blakely v. Washington*, 542 U.S. 296 (2004), in which the United States Supreme Court held that, other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 301 (*citing Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)); *see also United States v. Booker*, 543 U.S. 220, 232 (2005) (same). However,

---

[4]As it stands, if Petitioner does not obtain relief in the state courts, he will likely be unable to raise them in a second federal habeas petition. See 28 U.S.C. § 2244(b). If Petitioner is desirous of maintaining an avenue of federal review, he may file a motion for rehearing seeking to add his unexhausted claim to the petition and seeking an order holding the case in abeyance while he pursues relief in the state court.

this claim has been foreclosed by the Sixth Circuit's decision in *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (*Apprendi's* rule does not apply to judicial fact-finding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum); *see also Montes v. Trombley*, 599 F.3d 490, 495 (6th Cir. 2010) (same). This Court is bound by the Sixth Circuit's decisions. Habeas relief is not warranted.

## V.  Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability ("COA") must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37.

The Court finds that Petitioner has made a substantial showing of the denial of a constitutional right as to his first and second habeas claims. Accordingly, a certificate of appealability will be granted with respect to those claims but denied  with respect to his third claim.

## VI. Conclusion

For all of the foregoing reasons,

**IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus is **DENIED** and

-34-

this case, accordingly, is **DISMISSED, WITH PREJUDICE**.[5]

   **IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED** with respect

to Petitioner's first and second claims but **DENIED** with respect to his third claim.


                              s/Gerald E. Rosen_____
                              Chief Judge, United States District Court

Dated:  June 24, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel
of record on June 24, 2013, by electronic and/or ordinary mail.

                              s/Julie Owens_____
                              Case Manager, (313) 234-5135

---

   [5]  As expressed above, the Court views Petitioner's strongest claim -- i.e., the precise
issues surrounding the denial of his right to present a defense due to ineffective assistance of
counsel -- as unexhausted.  This Order is without prejudice to Petitioner's right to seek to
exhaust this unexhausted claim in further state court proceedings.

-35-